UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY ELLEN BOZYCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 10 C 8189 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mary Ellen Bozych ("Bozych") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying a portion of her claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Bozych and the Commissioner filed cross-motions for summary judgment. For the reasons set forth below, Bozych's motion is granted and the Commissioner's motion is denied.

### BACKGROUND

**I.     Procedural History**

Bozych filed an application for DIB on November 8, 2006, alleging disability as of June 30, 2004, due to multiple sclerosis ("MS"). Bozych's application was initially

denied on March 28, 2007, and again upon reconsideration on May 21, 2007. Bozych requested a hearing, which was conducted before an Administrative Law Judge ("ALJ") on October 20, 2008. On February 11, 2009, the ALJ rendered a partially favorable decision for Bozych, finding that Bozych was not disabled until November 1, 2007. Having exhausted her administrative remedies, Bozych filed the instant action on December 27, 2010.

**II.    Medical Evidence**

Although the medical evidence presented in this case is extensive, only the following evidence is relevant to the ensuing discussion.

**A.    Physical Impairments**

Bozych was first diagnosed with MS in 1996. In April 2004, an MRI of Bozych's brain revealed findings consistent with MS. On June 30, 2004, Bozych quit her job as a dispatcher in the transportation industry because her MS "got too bad." Her treating neurologist, Dr. Melvin Wichter ("Dr. Wichter"), prescribed Avonex, which caused side effects of nausea, depression, edginess, and melancholy. Bozych used Avonex intermittently through 2006 because of these adverse side effects.

In May 2006 and October 2007, two additional MRIs revealed that Bozych's MS had not progressed. Dr. Wichter's treatment notes from December 2006 indicate that Bozych wanted to discontinue her medication and that she was feeling "very good, wonderful."

In February 2007, Dr. M.S. Patil ("Dr. Patil") performed a consultative examination of Bozych and confirmed a diagnosis of MS. Dr. Patil noted that Bozych complained of fatigue and showed difficulty walking, but results from a neurological exam were within normal limits. Dr. Wichter's treatment notes from 2007 indicate that Bozych was experiencing extreme fatigue and "heavy legs." In March 2008, Bozych expressed increased significant spasticity, and clinical findings indicated that her MS had progressed and her condition had worsened.

### B.     Mental Impairments

Bozych reported that she had been receiving treatment for depression for the past twenty years. On August 21, 2007, Dr. Piyush C. Buch ("Dr. Buch") conducted a mental status exam, during which Bozych related a history of depression, variable sleep, and poor energy levels. Dr. Buch diagnosed Bozych with major depressive disorder and concluded that Bozych exhibited appropriate behavior, related well, and could understand, remember, and carry out instructions.

On August 29, 2007, state agency psychologist Carl Hermsmeyer, Ph.D. ("Dr. Hermsmeyer") reviewed the record evidence and completed a psychiatric review technique form. Dr. Hermsmeyer noted that Bozych suffered from major depressive disorder and found that Bozych had mild limitations in performing "activities of daily living" and moderate difficulties in "maintaining social functioning" and

"concentration, persistence, and pace." Dr. Hermsmeyer concluded that Bozych's depression was "more than non-severe" and that while she may experience difficulty with understanding, remembering, and carrying out detailed instructions, she could perform simple one and two-step tasks at a consistent pace.

### C. The Administrative Hearing

On October 20, 2008, the ALJ conducted a hearing, during which she received testimony from Bozych, medical expert Dr. John Slodki ("Dr. Slodki"), and a vocational expert ("VE"). Bozych testified that she had stopped working in 2004 because her fatigue was overwhelming and the stressful and competitive nature of her work exacerbated her condition. She stated that she discontinued Avonex because it made her nauseous. Dr. Slodki testified that Bozych's impairments reached disabling severity sometime between June 4, 2007 and March 17, 2008, and that prior to this time she was capable of performing sedentary work. The VE testified, in response to a hypothetical question posed by the ALJ, that someone with Bozych's age, education, work experience, and functional limitations could perform a considerable number of jobs in the national economy.

## LEGAL STANDARD

### I. Statutory and Regulatory Framework

Under the Social Security Act, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). The Social Security Administration ("SSA") evaluates disability claims under a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the SSA in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Appendix 1"); (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy. 20 C.F.R. § 404.1520(a)(4)(I-v). An affirmative answer at step three or step five requires a finding of disability, while a negative answer at any step other than step three precludes such a finding. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

## II.     Standard of Review

A district court reviewing an ALJ's decision must affirm the decision if it is supported by substantial evidence and does not contain legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such evidence as a reasonable mind might accept to adequately support a conclusion." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). A court will not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d

836, 841 (7th Cir. 2007) (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). However, an ALJ is not entitled to unbridled judicial deference. *Clifford*, 227 F.3d at 869. A court will reverse or remand if the ALJ fails to rationally articulate the grounds for her decision or fails to build a logical bridge from the evidence to her conclusions. *Steele*, 290 F.3d at 941.

## DISCUSSION

### I. The ALJ's Decision

The ALJ conducted the five-step analysis required by the regulations and found that Bozych's MS medically equaled Listing 12.09 of Appendix 1 as of November 1, 2007, but that Bozych was not disabled from June 30, 2004, through October 31, 2007. At step two of the analysis, the ALJ determined that Bozych's depression was not severe within the meaning of the regulations. In doing so, the ALJ disagreed with Dr. Hermsmeyer, who opined that Bozych's depression was "more than non-severe" and determined that Bozych may have problems with understanding, remembering, and the ability to carry out detailed instructions.

At step three, the ALJ determined that Bozych's impairments did not meet or medically equal the listings of Appendix 1. Prior to performing steps four and five, the ALJ determined Bozych's residual functioning capacity ("RFC"), which is "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 416.945(a). In assessing Bozych's RFC, the ALJ determined that Bozych's statements regarding the intensity,

persistence, and functionally limiting effects of her symptoms were not credible prior to November 1, 2007. The ALJ then relied on the testimony of the VE to conclude that Bozych could perform a significant number of jobs and was therefore not disabled prior to November 1, 2007.

Bozych contends that her claims should be remanded to the SSA for reconsideration because the ALJ committed three errors. First, Bozych asserts that the ALJ erroneously rejected Dr. Hermsmeyer's conclusions regarding the severity of her depression at step two. Second, Bozych argues that the ALJ rendered an erroneous credibility finding against Bozych in determining her RFC. Finally, Bozych asserts that the ALJ posed an incomplete hypothetical question to the VE at step five.

## II.    The ALJ's Rejection of Dr. Hermsmeyer's Conclusions

Bozych argues that the ALJ erroneously rejected Dr. Hermsmeyer's conclusions in determining the severity of Bozych's depression at step two of the ALJ's analysis. Upon a review of the record evidence, Dr. Hermsmeyer determined that although Bozych's depression did not meet listing-level severity, it was "more than non-severe" and recommended an RFC to determine the severity of Bozych's impairments. Additionally, Dr. Hermsmeyer determined that Bozych exhibited "moderate" impairments in both "social functioning" and "concentration, persistence, or pace." The

ALJ, however, found that Bozych's impairments in these two areas were mild. The ALJ concluded that, in the absence of "moderate" limitations in one of these areas, Bozych's mental impairments were not severe pursuant to 20 C.F.R. § 404.1520a(d)(1).

An ALJ "is not required or indeed permitted to accept medical evidence if it is refuted by other evidence–which need not itself be medical in nature . . . ." *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). However, ALJs " must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). If an ALJ rejects an expert opinion in favor of her own lay opinion, the ALJ's decision will be necessarily lacking in evidentiary support. *Id.* at 971.

Dr. Hermsmeyer, at the behest of the SSA, was charged with the task of reviewing the record evidence, including the results of Dr. Buch's mental status exam, and drawing specific conclusions regarding the severity of Bozych's symptoms. Dr. Hermsmeyer was the only mental health professional to review and interpret the record evidence and to make a determination of Bozych's limitations in "social functioning" and "concentration, persistence, and pace." Although the ALJ substantiated her interpretation of the medical evidence by referring to Dr. Buch's mental status report, she nevertheless rejected the only medical professional's interpretation of this evidence in favor of her own lay interpretation. In doing so, the ALJ impermissibly "played doctor."

While the ALJ's conclusion is not illogical or unsupported, "common sense can mislead, [and] lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990), *cert. denied*, 502 U.S. 901 (1991). The ALJ erroneously relied on her "common sense" to discount Dr. Hermsmeyer's opinion. For example, the ALJ noted that Bozych reported a twenty year history of treatment for depression. Because Bozych was gainfully employed for part of this time, the ALJ inferred that her depression did not compromise her ability to work. However, maintaining employment is not necessarily inconsistent with a claim of disability, as the claimant "may have a careless or indulgent employer or be working beyond his capacity out of desperation." *Henderson v. Barnhart,* 349 F.3d 434, 435 (7th Cir. 2003); *Wilder,* 153 F.3d at 801.

Moreover, even if the ALJ correctly determined that Bozych's depression was not severe, she erred by failing to consider Bozych's depression in her RFC determination. If an ALJ finds that one or more impairments is severe, she must consider "the *aggregate* effect of the entire constellation of ailments– including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original); SSR 96-8p, 1996 WL 374184 (July 2, 1996). Here, the ALJ failed to include Bozych's depression in her RFC analysis. The ALJ noted that Dr. Wichter's notes "make only passing references to depression." However, Dr. Wichter is a neurologist, not a mental health professional. The only two mental

health professionals in this case both diagnosed Bozych with major depressive disorder and the ALJ failed to include any reference to these diagnoses in her RFC analysis. Because the ALJ failed to consider the aggregate effect of all of Bozych's impairments, remand is necessary to properly determine the combined effects of Bozych's impairments.

## III. The ALJ's Credibility Finding

Bozych next challenges the ALJ's credibility finding in her RFC determination. An ALJ must determine a claimant's credibility only after considering the claimant's subjective symptoms in their entirety and the extent to which these symptoms are consistent with the record evidence. 20 C.F.R. § 404.1529(a). Although courts grant special deference to the credibility findings of an ALJ, such findings may be overturned if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (internal citations omitted).

The ALJ's credibility determination is flawed for three reasons. First, the ALJ determined that Bozych's statements regarding the intensity, persistence and limiting effects of her symptoms were not credible prior to November 1, 2007 because they was inconsistent with the medical evidence. However, the ALJ does not cite to any objective medical evidence that is inconsistent with Bozych's complaints of extreme chronic fatigue. Rather, her discussion focuses almost exclusively on evidence relating

to Bozych's motor functioning. Absent any discussion of evidence inconsistent with Bozych's alleged symptoms, the ALJ's credibility finding is unsubstantiated.

Second, the ALJ determined that Bozych's statements regarding the limiting effects of her symptoms were not credible because they were unsupported by the medical evidence. However, an ALJ may not reject a claimant's statements about the "intensity and persistence of [her] pain or other symptoms . . . solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Rather, an ALJ must also consider: (1) the claimant's daily activity, (2) the duration, frequency, and intensity of her symptoms, (3) precipitating and aggravating factors, (4) the dosage, effectiveness, and side effects of any medication, and (5) functional restrictions. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).

The ALJ failed to comprehensively consider these factors and at times misstated the evidence in the record to support her conclusions. For instance, the ALJ stated that Bozych discontinued her medication for a period of time, even though Bozych "reported no problems with it." However, Bozych's testimony and questionnaires indicate that she "did not have a lot of success" with her medication and that it made her sick. An ALJ may not ignore evidence of side effects of medication to make an adverse credibility finding due to a claimant's non-compliance with medication. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("[N]egative side effects from medication may excuse failure to pursue treatment."). The ALJ also stated that Bozych left her job

- 11 -

as a dispatcher because the work was extremely competitive and stressful. However, Bozych's testimony reveals that this is only partially true. Bozych testified that she left because she experienced overwhelming fatigue, persistent nausea, and flu-like symptoms. The ALJ failed to include this testimony when noting Bozych's reasons for leaving her previous job.

Moreover, the record is replete with evidence corroborating Bozych's complaints of fatigue. For instance, Dr. Wichter made multiple references to fatigue throughout his treatment records, dating back to August 2004, and he further noted severe fatigue and "heavy legs" in treatment notes from June 2007. In an "Activities of Daily Living Questionnaire," Bozych indicated that weakness and fatigue prevented her from completing many activities of daily living and she reiterated her complaints of constant fatigue to Dr. Patil in February 2007. Dr. Buch also reported that Bozych suffered from variable sleep and poor energy levels. The ALJ erred by failing to account for this evidence in her credibility determination. *See Myles*, 582 F.3d at 678 (stating that although an ALJ is not required to address every piece of evidence in the record, she cannot ignore lines of evidence contrary to her decision).

Third, the ALJ erroneously based her credibility finding, in part, on several statements made by Bozych to her treating neurologist that indicate her condition was improving. However, when a claimant is under continuous treatment for a chronic disease, an ALJ may not rely on a claimant's "hopeful remarks" regarding her prognosis

to evaluate the severity of her symptoms. *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). Here, the ALJ declined to attribute Bozych's fatigue to her depression. In doing so, the ALJ noted that Bozych "was trying to keep a positive attitude" and that she often reported to be doing well, "even wonderful." Bozych's generalized "hopeful remarks" about her condition cannot form the basis upon which her credibility can be undermined.

This is not to say that the ALJ's ultimate credibility finding was incorrect. Rather, we find only that the bases upon which she reached this conclusion were legally erroneous and unsupported by substantial evidence. Although each of these errors, standing alone, may not be sufficient to warrant remand, together they cast doubt on the soundness of the ALJ's reasoning. On remand, the ALJ must reevaluate Bozych's complaints of fatigue with due regard for the full range of medical evidence, including her major depressive disorder.

## IV.  The ALJ's Hypothetical

Finally, Bozych challenges the ALJ's step five analysis. At step five, an ALJ must determine whether a claimant can perform work in the national or regional economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). The ALJ asked the VE whether an individual with Bozych's age, education, past relevant work experience, and functional limitations could obtain employment in the regional economy. A hypothetical question posed to a VE "must include *all* limitations supported by medical

evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original) (internal citations omitted). As discussed above, the ALJ's determination of Bozych's functional limitations was flawed because she did not appropriately consider Bozych's depression or her symptoms of fatigue. Therefore, her hypothetical question did not include all of Bozych's limitations. Should the ALJ consult with a VE upon remand, she must present a hypothetical question that incorporates all of Bozych's impairments.

## CONCLUSION

Based on the foregoing, the Court grants Bozych's motion for summary judgment, denies the Commissioner's motion for summary judgment, and remands Bozych's claim to the SSA for reconsideration. The Court does not hold that Bozych is entitled to benefits and makes no determination regarding the onset date of her alleged disability.

							/s/ Charles P. Kocoras
							Charles P. Kocoras
							United States District Judge

Dated:  December 20, 2011